IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ohio Democratic Party,

        Plaintiff,

   v.

Frank LaRose, in his official capacity as
Ohio Secretary of State,

        Defendant.

Case No: 2:19-cv-3774

Judge Graham

Magistrate Judge Deavers

## Opinion and Order

Plaintiff Ohio Democratic Party (the "ODP") brings this suit against Frank LaRose, Ohio Secretary of State, alleging that the Secretary is preparing to unlawfully remove up to 30,600 eligible voters from Ohio's voter registration database. The ODP seeks a temporary restraining order to prevent the Secretary from proceeding with his plan to remove registrants from the database on September 6, 2019.

For the reasons that follow, the ODP's motion for a temporary restraining order is DENIED.

**I.   Background**

    **A.   The Voter File**

The State of Ohio maintains a computerized voter registration database, as required by 52 U.S.C. § 21083. This database, which the parties refer to as the Voter File, "contains the name and registration information of every legally registered voter in the State." *Id.* at § 21083(a)(1)(A). The Voter File is publicly accessible on the Secretary's website. The Voter File contains such information as the voter's name, address, date of voter registration, party affiliation, county, school district and precinct.

The Secretary is required by law to keep the Voter File "accurate" and "updated regularly." *Id.* at § 21083(a)(4). To that end, the Secretary must implement a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote." *Id.* at § 21083(a)(4)(A). Individuals who are not registered to vote or who are not eligible to vote may be removed from the Voter File. *Id.* at § 21083(a)(2)(B)(ii). Registrants who "have not responded to a notice and who have

1

not voted in 2 consecutive general elections for Federal office shall be removed from the official list of eligible voters, except that no registrant may be removed solely by reason of a failure to vote." *Id.* at § 21083(a)(4)(A). The Secretary must implement "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* at § 21083(a)(4)(B).

### B. The Supplemental Process

Residency is a key criteria of voter eligibility. Ohio voters must reside in the district in which they vote. O.R.C. § 3503.01(A). If they move out of their district, they are no longer eligible to vote there. *Id.* Ohio uses two measures to determine which registrants should be removed from the Voter File on change-of-residence grounds. The first is reliance on the United States Postal Service's National Change of Address list. *Id.* at § 3503.21(B)(1). Federal law expressly allows states to rely on the Postal Service's list. 52 U.S.C. § 20507(c)(1).

The second measure, called the "Supplemental Process," involves sending confirmation notices to registrants who have not voted for two years. Registrants who do not return the confirmation notice and fail to vote in any election for four more years are removed on the presumption that they have moved. O.R.C. § 3503.21(A)(7), (B)(2).

The United States Supreme Court upheld Ohio's Supplemental Process for determining which registrants are subject to removal from the Voter File. *See Husted v. A. Philip Randolph Institute*, 584 U.S. __, 138 S. Ct. 1833 (2018). The Court held that the Supplemental Process does not violate the National Voter Registration Act of 1993, 52 U.S.C. § 20507.

Litigation concerning whether the notices sent by the State to inactive voters between 2007 and 2015 complied with federal law was resolved through a settlement agreement reached on August 28, 2019 in *A. Philip Randolph Institute v. Husted*, Case No. 2:16-cv-303 (S.D. Ohio). Under the settlement agreement, voters whose registrations were canceled through the Supplemental Process may cast a provisional ballot, so long as the provisional ballot reflects that the voter's residence is within the same precinct and county as where their canceled registration originated.

### C. The Last Chance Notice and Registration Reset List

On June 26, 2019, the Secretary issued Directive 2019-09 to county boards of elections. It required boards to send "last chance" notices to individuals whose registrations would be canceled under the Supplemental Process following the May 7, 2019 special and primary election. These individuals were ones who had received a confirmation notice in 2015 and had failed to respond to the notice, vote or update their registration in the four years since.

The last chance notice gives recipients an opportunity to update or confirm their address and avoid having their registration canceled. *See* Ohio Sec'y of State Form 255-A-3. The notices were to be sent by July 29, 2019 and advised recipients that their registrations would be canceled on September 6, 2019 if they failed to respond. *See* O.R.C. § 3503.21(E) (concerning timing of cancellation).

Directive 2019-09 further required boards of elections to provide the Secretary with a list of registrants who had been sent last chance notices. Boards were to do so by July 15, 2019. From these lists, the Secretary would populate a Registration Reset List of registrants who were subject to removal from the Voter File on September 6, 2019.

On June 26, 2019 the Secretary announced his intention to make the Registration Reset List available to interested organizations. *See* Grandjean Decl. at ¶ 31. On August 1, the Secretary published the List and made it publicly available on his website. *Id.* at ¶ 32.

### D. Allegations of Inaccuracies

The complaint alleges that the List contains 235,610 registrants. According to the complaint, voting rights groups and other organizations have obtained the List and reported inaccuracies they have discovered since early August 2019. In particular, the complaint cites an August 5 article in *The Columbus Dispatch* article that 1,100 voters in Franklin County were incorrectly sent last chance notices. On August 15, the Ohio League of Women Voters reported that it had found 4000 voters on the List who were listed as having "active" status on the Secretary's website. The League also reported that it had found 17,500 voters on the List who had voted as recently as November 2018.

The complaint further alleges that on August 16 the Secretary's own staff identified 1,450 voters who were wrongly included on the list. The complaint cites a *Columbus Dispatch* article in support of this contention.

On August 19, the Ohio House Democratic Caucus reported to the Secretary that it had found 6,500 eligible voters who were wrongly included on the List. The vast majority of the errors related to voters who had moved within their own counties, the complaint alleges.

### E. Filing of this Suit

The ODP filed this suit on Friday, August 30, 2019. The complaint alleges that if the various reports have no overlap in numbers, then there are nearly 30,600 eligible voters who have been wrongly included on the Registration Reset List and could have their registrations canceled on Friday, September 6, 2019.

The complaint asserts that the Secretary's intentional reliance on a flawed Registration Reset List will deny thousands of Ohioans of their fundamental right to vote in violation of the First

Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The complaint further asserts that the Secretary has violated the Help America Vote Act by failing to implement safeguards to ensure that eligible voters are not removed in error from the Voter File. 52 U.S.C. § 21083(a)(4)(B).

The ODP filed a motion for a TRO simultaneously with filing the complaint. The ODP seeks a TRO enjoining the Secretary from removing voters from the Voter File using the Supplemental Process or the Postal Service's National Change of Address list. The ODP seeks, in the alternative, a TRO requiring the Secretary to count all provisional ballots cast by voters on the Registration Reset List, so long as the voter can be identified.

The ODP notes that certain municipalities in Ohio, including Toledo and some in Cuyahoga and Summit Counties, will hold a primary election on September 10, 2019 and that the general election will occur on November 5, 2019. The deadline for registering for the general election is October 7.

### F.     Procedural History

The Court conducted a telephone conference with the parties at 3:00 p.m. on August 30, 2019, in accordance with Local Civil Rule 65.1(a). The Court instructed the parties to email to chambers certain materials referenced during the conference. The parties did so by 5:00 p.m. that day. The Court further directed the Secretary to submit a response to the motion for a TRO by 10:00 a.m. on Tuesday, September 3.

The Court conducted an additional telephone conference at 1:00 p.m. on September 3. The ODP was granted leave to file a supplemental brief, which it did on September 3. The Court has scheduled a preliminary injunction hearing for September 9, 2019.

## II.    Standard of Review

Temporary restraining orders are authorized under Rule 65(b) of the Federal Rules of Civil Procedure. They are extraordinary remedies governed by the following considerations: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent an injunction, (3) whether issuance of the injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the requested injunction. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The party seeking preliminary relief "bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir.

2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000); *accord Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012).

### III.    Discussion

#### A.    Likelihood of Success on the Merits

In its motion for temporary relief, the ODP focuses on its Due Process claim as the one for which it has a strong likelihood of success on the merits. The ODP argues that it is fundamentally unfair for the State to disenfranchise voters through a voter-purging system that it knows will result in the cancellation of registrations for about 30,000 voters who are in fact eligible to vote. In support, the ODP emphasizes that the Registration Reset List's error rate exceeds 10% (30,000 out of 235,000) and that the Secretary has failed to respond to the public reports about inaccuracies on the List.

The Court starts with the well-established principle that the "right to vote is a fundamental right, 'preservative of all rights.'" *League of Women Voters v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). "[A]ny alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964).

The Constitution "leaves the conduct of state elections to the states." *Warf v. Bd. of Elections of Green Cnty., Ky.*, 619 F.3d 553, 559 (6th Cir. 2010) (internal quotation marks omitted). Thus, principles of federalism "limit the power of federal courts to intervene in state elections." *Id.* (internal quotation marks omitted). "[O]nly in extraordinary circumstances will a challenge to a state [or local] election rise to the level of a constitutional deprivation." *Id.* (internal quotation marks omitted).

In light of these two principles – the right to vote and federalism – courts have found that the "Due Process Clause protects against extraordinary voting restrictions that render the voting system 'fundamentally unfair.'" *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 597 (6th Cir. 2012). "Such an exceptional case may arise, for example, if a state employs non-uniform rules, standards and procedures, that result in significant disenfranchisement and vote dilution, . . . or significantly departs from previous state election practice." *Warf*, 619 F.3d at 559 (internal quotation marks and citations omitted). But "garden variety election irregularities" do not rise to that level." *Id.*

The Court finds that the ODP has not, at this early stage, demonstrated a strong likelihood of success on the merits. The OPD's case rests on the factual assertion that there are up to 30,000 voters whose names are on the Registration Reset List in error. The ODP has not submitted any evidence

in support of this assertion. Rather, it relies on the reports of other organizations that they have found errors on the List. *See United States v. Baker*, 432 F.3d 1189, 1211 (11th Cir. 2005) (holding that *Miami Herald* articles were inadmissible hearsay when offered to prove truth of their contents); *Horta v. Sullivan*, 4 F.3d 2, 8-9 (1st Cir. 1993). From these reports, the ODP constructs a worst-case scenario of over 30,000 unique voters being wrongly placed on the List. But the ODP has not, for instance, submitted declarations from knowledgeable individuals affiliated with the House Democratic Caucus, League of Women Voters or *The Columbus Dispatch* explaining the methodology and basis used to conclude that certain numbers of voters were wrongly included on the List.

When asked by the Court what evidence the ODP has of inaccuracies on the List, counsel pointed to two public concessions that the Secretary has made: one of 123 voters in Franklin County being mistakenly removed from the Voter File in January 2019 and one of 1,450 voters being discovered by the Secretary's staff on August 16 as wrongly included on Registration Reset List for removal on September 6, 2019.

This evidence does not establish that the Secretary is implementing measures which render the voting system fundamentally unfair. The occurrence of a past problem with the List does not prove the existence of a current one. More importantly, the Secretary has shown in both instances that he restored those registrants who were eligible to vote to the Voter File. *See* Grandjean Decl. at ¶¶ 36-38. In other words, the Secretary has acted to ensure eligible voters are not removed from the File when he has discovered errors on the List.

Even if the outside reports of inaccuracies are true, the ODP has not established a strong likelihood of success in proving that the Secretary's system is so fundamentally unfair as to constitute a Due Process violation. Federal law places an affirmative duty on the Secretary to make "a reasonable effort to remove registrants who are ineligible to vote." 52 U.S.C. § 21083(a)(4)(A). Indeed, registrants who "have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office *shall* be removed from the official list of eligible voters, except that no registrant may be removed solely by reason of a failure to vote." *Id.* at § 21083(a)(4)(A) (emphasis added).

In Ohio, county boards of elections administer local elections. O.R.C. § 3501.11. The boards "[i]nvestigate and determine the residence qualifications of electors," maintain voter registration records and "remove ineligible electors from voter registration lists in accordance with law and directives of the secretary of state." *Id.* at § 3501.11(Q), (U). In compiling the Voter File and the Registration Reset List, the Secretary relies on records submitted by the boards. *Id.* at § 3503.15(C); Ohio Sec'y of State Directive 2019-09.

The ODP argues that the Secretary knows there are flaws in the compiled data and that the Secretary is intentionally moving forward to disenfranchise eligible voters.[1] The Court is unwilling at this preliminary juncture, and without supporting evidence, to infer ill intentions on the part of the Secretary. To the Court's knowledge there is no requirement that the Secretary make public the list of those who would be removed from the voter registration rolls, but he did so. And the Secretary provided transparency to the point of inviting interested organizations to review the Registration Reset List and provide feedback. This effort, it would seem, would serve to reduce inaccuracies on the List. There is no evidence demonstrating that the Secretary is recalcitrant in fixing errors when his own staff can verify them. As noted above, the Secretary has on two occasions this year restored eligible voters to the Voter File. *Compare with Ne. Ohio Coal. for Homeless*, 696 F.3d at 597-98 (finding sufficient evidence of purposeful conduct where the State announced its intent "to enforce strict disqualification rules without exception" with respect to precinct rules even after being confronted with evidence that "systemic poll-worker error" was to blame for thousands of wrong-precinct ballots).

Accordingly, the Court finds that the ODP has not demonstrated a strong likelihood of success in showing that the Secretary is imposing extraordinary voting restrictions which render the voting system fundamentally unfair.

**B.    Irreparable Injury**

The Court further finds that the ODP has not met its burden of showing irreparable injury absent an injunction. Without question, denial of the fundamental right to vote "constitutes irreparable injury." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). The evidence, however, establishes that the Secretary has implemented numerous safeguards to enable eligible voters to vote.

To start, those who are identified through the Supplemental Process as not having voted for two years are provided with a confirmation notice sent by forwardable mail. 52 U.S.C. § 20507(d)(2). The notice provides a preaddressed, postage prepaid return card. *Id.* The Secretary does not remove these individuals from the Voter File unless, over the next four years, they fail to do any of the following: return the card, vote in any election, engage in any voter activity (such as signing a petition or filing a voter registration form), update their registration or update or confirm their address at the Ohio Bureau of Motor Vehicles. *See* O.R.C. § 3503.21(A)(7), (B)(2); *A. Philip Randolph Institute*, 138 S.

---

[1] The Sixth Circuit has not decided whether a Due Process violation regarding the right to vote requires intentional conduct. *See Ne. Ohio Coal. for Homeless*, 696 F.3d at 597. The ODP proceeds on a theory that the Secretary has acted intentionally because he has been made aware of the reported errors on the Registration Reset List.

7

Ct. at 1840-41; Ohio Sec'y of State Directive 2019-09; Grandjean Decl. at ¶ 24. "It was Congress's judgment that a reasonable person with an interest in voting is not likely to ignore notice of this sort." *A. Philip Randolph Institute*, 138 S. Ct. at 1848.

As an added measure, the Secretary implemented the last chance notice and Registration Reset List system. The last chance notices, sent by forwardable mail on or before July 29, 2019, give recipients an opportunity to avoid having their registrations canceled by updating or confirming their address, either online or by returning the notice in a preaddressed envelope. Further, the Secretary publicly released the Registration Reset List. Presumably, those individuals who find their names on it in error may notify the Secretary's Office and have verified errors corrected.

The ODP argues it is inevitable that some eligible voters on the List will either disregard the last chance notice as inadvertently sent or as junk mail. And some of this group who reside in Toledo or in Cuyahoga or Summit Counties will face immediate injury when they go to vote in a September 10, 2019 primary, only to find out they were removed from the Voter File on September 6.

The Secretary has represented to the Court and presented evidence that it has instructed boards of elections in counties holding September 10 primary elections not to cancel the registrations of voters on the Registration Rest List until after September 10. *See* Grandjean Decl. at ¶ 30.

In addition, two avenues for voting remain for voters whose names are on the List in error and who disregard the last chance notice and are removed from Voter File. They can register to vote by October 7, 2019. The ODP takes issue with this option, arguing that a person who has properly registered to vote and has been removed from the Voter File through no fault of their own should not be forced to re-register.

The Court, for argument's sake, will accept as valid the ODP's assertion about the burden of re-registration. Nonetheless, affected voters can take a second avenue and arrive at their polling place and cast a provisional ballot. 52 U.S.C. § 21082(a); O.R.C. § 3505.181. Provisional ballots "shall be counted" if the county board of elections or Secretary determines that the individual is "eligible under State law to vote." 52 U.S.C. § 21082(a)(4); *accord* O.R.C. § 3505.183. A cure period of seven days is granted to provisional voters who are unable to provide the required forms of identification on election day. O.R.C. § 3505.181(B)(7). The board of elections or Secretary must provide the voter with free access to discover if their provisional ballot was counted and, if not, the reason the vote was not counted. 52 U.S.C. § 21082(a)(5); O.R.C. § 3505.181(B)(5).

The ODP argues that access to a provisional ballot does not adequately protect the right to vote. In support, the ODP cites the findings made by Judge Marbley of this Court in *Ne. Ohio Coal.*

8

*for the Homeless v. Husted*, No. 2:06-cv-896, 2016 WL 3166251 (S.D. Ohio June 7, 2016), *aff'd in part, rev'd in part*, 837 F.3d 612 (6th Cir. 2016). In that case, Judge Marbley considered, among other things, an equal protection challenge to Ohio Senate Bill 216, which required provisional voters to complete an affirmation form with the voter's name, birthdate, address, signature and statement of eligibility. After a bench trial, Judge Marbley made extensive findings of facts, supported by the testimony of board of elections officials and individual voters, that provisional ballots had not been counted because of technical errors, such as transposing numbers or writing a name in cursive instead of print. *Id.*, 2016 WL 3166251, at \*\*14-17. On appeal, the Sixth Circuit found that the State had not offered "justification for mandating technical precision" in address and birthdate fields. 837 F.3d at 632.

The Court finds that the ODP has not met its burden of showing that the Secretary or boards of elections still disqualify voters for technical mistakes. In response to Judge Marbley's and the Sixth Circuit's decisions, the Secretary issued Directive 2016-38 on October 14, 2016 that boards of elections shall not reject a provisional ballot for technical mistakes. *See* Grandjean Decl. at ¶ 42. The ODP has not supported its conclusory assertion that Ohio continues to disregard provisional ballots for trivial reasons.

Moreover, Judge Marbley held (and the Sixth Circuit affirmed) that despite the then-practice of rejecting ballots on technicalities, the State had not committed a Due Process violation because the evidence did not reveal that there had been such significant disenfranchisement and voter dilution as to create a fundamentally unfair voting system. *Ne. Ohio Coal. for the Homeless*, 2016 WL 3166251, at \*43; *accord* 837 F.3d at 637 ("Nor do the technical-perfection requirements that SB 205 and SB 216 impose on absentee and provisional voters rise to an exceptional level of unfairness comparable to grossly non-uniform procedure or significant voter disenfranchisement.").

Accordingly, the Court finds that the ODP has not met its burden of demonstrating an irreparable injury absent injunctive relief.

### C. Public Interest and Harm to Others

Consideration of the remaining two TRO factors does not alter the Court's analysis and conclusion. The ODP brings this suit in part on behalf of voters and the public interest in fair elections. Thus, the ODP's argument regarding irreparable injury relates as much to alleged harm to voters whose names appear on the Registration Reset List as it does to harm to the ODP itself.[2]

---

[2] The Secretary's response brief challenges the ODP's standing to bring this suit. The Secretary raises substantial issues concerning whether the allegations of injuries to the ODP are speculative and whether the ODP can establish organizational standing. The Court will withhold ruling on the

The Court finds, as stated above, that the ODP has not demonstrated irreparable injury in the absence of a TRO. The Court further finds that the public has a substantial interest in the maintenance of accurate and up-to-date voter registration records. Indeed, the State has an obligation to keep the records "accurate" and "updated regularly." 52 U.S.C. § 21083(a)(4). The Secretary has been transparent in releasing the Registration Reset List to the public and inviting feedback. Court intervention to disrupt and delay this process would not serve the public interest.

## IV. Conclusion

Accordingly, plaintiff's motion for a temporary restraining order (doc. 2) is DENIED.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: September 3, 2019

---

standing issues until after the parties have an opportunity to fully address them at the September 9, 2019 preliminary injunction hearing.